Glenda GABEL, Individually, et al.,
Plaintiffs,

v.

HUGHES AIR CORP., a Delaware Corporation, doing business under the fictitious firm name and style of Air West and Hughes Air West, Defendants.

Civ. A. No. 71–1595–PH.

M.D.L. No. 106.

United States District Court,
C. D. California.

Oct. 12, 1972.

See also, D.C., 346 F.Supp. 529, D. C., 350 F.Supp. 624.

Lord Bissel & Brook, Chicago, Ill., and Shield & Smith, Los Angeles, Cal., for Hughes Air Corp.

Robert L. Meyer, U. S. Atty., and James Stotter, II, Asst. U. S. Atty., Los Angeles, Cal., for United States.

Vincent H. D. Abbey, Seattle, Wash., Belcher Offices, Los Angeles, Cal., Bronson Offices, Lawrason Driscoll, San Francisco, Cal., Butler, Jefferson & Fry, Hart & Mieras, Lawler, Felix & Hall, Loeb & Loeb, Los Angeles, Cal., Vincent Pettit, Inglewood, Cal., Garth S. Pincock, Pocatello, Idaho, Prince Offices, Ray, Quinney & Nebeker, Salt Lake City, Utah, Eugene J. Craig, Seattle, Wash., Jay H. Davison, Covina, Cal., Demanes & Sanders, Burlingame, Cal., Irving S. Feffer, Los Angeles, Cal., Feist, Vetter, Knauf & Loy, Oceanside, Cal., Offices of Ned Good, Goodman Hirschberg & King, Magana & Cathcart, Margolis Offices, John T. McTernan, Los Angeles, Cal., Miller Offices, Long Beach, Cal., Aaron P. Moss, Van Nuys, Cal., Arthur H. Nielsen, Salt Lake City, Utah, Oliver Offices, Richard L. Oliver, Los Angeles, Cal., Ben Peterson, Pocatello, Idaho, Roberts, Poole & Robson, Theron P. Roberts, Boise, Idaho, Jerry N. Roth, Beverly Hills, Cal., Lloyd E. Somogyi, San Luis Obispo, Cal., Sonenshine & Armstrong, Newport Beach, Cal., Walkup Offices, Terence J. O'Reilly, San Francisco, Cal., for plaintiffs.

## MEMORANDUM DENYING MOTION TO DISMISS

PEIRSON M. HALL, District Judge.

The above-numbered action is brought by the next of kin against Hughes Air West for the death of Keith A. Gabel, a passenger on Air West Flight 706 from Los Angeles, California, destined for Salt Lake City, Utah, which collided with a Marine jet on the evening of June 6, 1971, in the vicinity of Duarte, California, killing all 44 passengers, the 5 crew members of the Air West plane and pilot of the military jet. The co-pilot of the military jet parachuted to safety.

Within a month after the crash the plaintiffs in the above-entitled matter filed a petition for the preservation of testimony, under F.R.Civ.P. 27, which is Case No. 71–1431 of this Court, and filed a claim with the United States under the Federal Tort Claims Act upon which no action was taken within six months, resulting in the third action by the plaintiffs, No. 72–1–PH.

There were 50 deaths, but there are more than 60 lawsuits filed, so far, in this District and some in other Districts which have been transferred under the Multidistrict Litigation Statute, 28 U.S. C. § 1407, to this Court and to this Judge.[1]

---

1. As the cases were filed in this Court they were severed on liability and that issue was consolidated with 71–1431 and this case and No. 72–1 and discovery has been proceeding against both the United States and Hughes Air West. In some

**614**

Jurisdiction of plaintiffs' claim for relief in this case against Air West is based upon the Federal Question Statute, 28 U.S.C. § 1331:

> "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

the Regulation of Commerce Statute, 28 U.S.C. § 1337:

> "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."

and Diversity of Jurisdiction Statute, 28 U.S.C. § 1332.

Plaintiffs asserted that, of necessity, the United States as the owner of the military jet would, and it has since, become a party defendant in this litigation jurisdiction of which could only be had in the federal courts, thus giving this Court *pendent* jurisdiction of the action against Air West.

The motion to dismiss of Air West asserts generally that there is no federal question under 28 U.S.C. § 1331(a) and that no actionable right is conferred under the Federal Aviation Act of 1958 regulating air commerce which would give federal jurisdiction under 28 U.S.C. § 1337; and, by affidavit, asserts Hughes Air West is a corporation organized under the laws of Delaware and its principal place of business is in California, and thus there is no diversity under 28 U.S.C. § 1332(c).

By tacit understanding between the plaintiffs and Air West the motions to dismiss were put off calendar in order to permit discovery to proceed. This

memorandum is intended to serve as the law of the case in all of the cases filed arising out of that aircrash, which assert jurisdiction under 28 U.S.C. §§ 1331(a) and 1337, whether motions to dismiss have been filed by Air West or not. The cases are now at a posture which requires decision on the motions.

■ The tests as to whether or not a case arises under 28 U.S.C. §§ 1331 or 1337 are set out in Gully v. First National Bank, 299 U.S. 109, at 112–113, 57 S.Ct. 96, at 97, 98, 81 L.Ed. 70:

> "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * * A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, * * * and the controversy must be disclosed upon the face of the complaint, . . ."

■ After review of all of the authorities cited by the parties and those independently found by the Court, it is concluded (1) that the Federal Aviation Act of 1958 (72 Stats. 731, et seq., 49 U.S.C. § 1301 et seq.) imposed the duty upon the defendant carrier to perform its services "with the highest possible degree of safety in the public interest" (49 U.S.C. § 1431(b), and (2) so do the regulations promulgated by the Federal Aviation Administration to carry out the terms of the Act, viz., Title 14, Code of Federal Regulations, Sections 91.9, 91.65, 91.67, and 91.71, each of which are set out in the margin.[2]

---

cases third party complaints have been filed by Hughes Air West against the United States for indemnity, to which the United States has answered and cross-claimed for indemnity against Air West.

2. (i) Section 91.9:
   "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."
   (ii) Section 91.65:

■ It is further concluded that a violation of a duty imposed by the Act creates a cause of action in favor of one who is injured or damaged by the death of a person resulting from such violation; and that this Court has jurisdiction of such actions under 28 U.S.C. § 1337 and 28 U.S.C. § 1331.

We first have reference to the Act, subchapter VI, which contains the pertinent sections involved in this motion and is entitled *"Safety* Regulations of Civil Aeronautics." [3]

Section 1421 of 49 U.S.C. deals with the powers of the Administrator. Subdivision 1421(a)(1) thereof authorizes the Administrator and makes it *"his duty to promote safety of flight* of civil aircraft"; by (a)(2) establish *"minimum standards * * * in the interest of safety"*; by (a)(3) to promulgate reasonable rules and regulations *"in the interest of safety"* which govern the inspection, the equipment, the facility and the like; by (a)(4) to promulgate reasonable rules and regulations governing the reserve supply of aircraft, aircraft engines and the like *"in the interest of safety,"* and by (a)(5) to promulgate reasonable rules and regulations governing the maximum hours of work

of airmen and other employees of air carriers *"in the interest of safety,"* and by (a)(6) to promulgate such other reasonable rules and regulations as he may find necessary to provide *adequately "for national security and safety* in air commerce."

Subdivision (b) of 49 U.S.C. § 1421 has the provision hereinbefore quoted imposing upon air carriers the duty to perform their services with the *highest possible degree of safety* and provides that the Administrator "shall exercise and perform his powers and duties under this chapter in *such manner as will best tend to reduce or eliminate the possibility of,* or recurrence of, *accidents in air transportation."*

By subdivision (c) of 49 U.S.C. § 1421 he may grant exemptions "in the *public interest."*

By section 1422 of 49 U.S.C., (a)(b) the Administrator is authorized to issue certificates to certain people in and about the aircraft industry if he finds after investigation that the person is able to perform the required duties, which certificate shall contain the terms specified in that section, "and other matters as the Administrator may deter-

"(a) No person may operate an aircraft so close to another aircraft as to create a collision hazard. . . ."
(iii) Section 91.67:
"(a) *General.* When weather conditions permit, regardless of whether an operation is conducted under Instrument Flight Rules or Visual Flight Rules, vigilance shall be maintained by each person operating an aircraft in compliance with this section. When a rule of this section gives another aircraft the right of way, he shall give way to that aircraft and may not pass over, under or ahead of it, unless well clear.
" . . . .
"(c) *Converging.* When aircraft of the same category are converging at approximately the same altitude (except head on or nearly so) the aircraft to the others right has the right of way.
. . . ."
"(d) *Approaching Head-On.* When aircraft are approaching head-on, or nearly so, each pilot of each aircraft

shall alter course to the right to pass well clear. . . . "
(iv) Section 91.71:
"No person may operate an aircraft in acrobatic flight—
(a) Over any congested area of a city, town, or settlement;
(b) Over an open air assembly of persons;
(c) Within a control .zone or *Federal airway;*
(d) Below an altitude of 1,500 feet above the surface; or
(e) When flight visibility is less than three miles.
For the purposes of this section, acrobatic flight means an intentional maneuver involving an abrupt change in an aircraft's attitude, an abnormal attitude, or abnormal acceleration, not necessary for normal flight."

3. All emphasis indicated throughout this memorandum is supplied unless otherwise indicated.

mine to be necessary *to assure safety in air commerce.*"

In section 1423(a)(2) of 49 U.S.C. the Administrator is authorized to issue certificates for aircraft and appliances as is reasonably required *"in the interest of safety"* and he may require tests as he deems necessary in the *interest of safety* of various types of equipment, and is authorized to issue a certificate only when he finds that such equipment is of proper \* \* \* *"performance for safe operation,"* and may insert in this certificate other terms as he deems *"as are required in the interest of safety."*

By subdivision (b) of 49 U.S.C. § 1423 he is authorized to issue production certificates, and, "may prescribe in any such production certificate," not only the duration thereof but *"such other terms,* conditions and limitations *as are required in the interest of safety."*

By subdivision (c) of 49 U.S.C. § 1423 he may issue air worthiness certificates for aircraft if he finds "that the aircraft is in condition for *safe operation."*

Under the provisions of section 1424, Title 49 U.S.C., he is empowered to issue air carrier operating certificates and to *"establish minimum safety standards* for the operation of the air carrier."

By section 1425 it is made "the *duty of every person* engaged in operating \* \* \* equipment to observe and comply with the requirements of this chapter relating thereto, and the orders, rules and regulations issued thereunder."

By subsection (b) of 1425 the Administrator is authorized to employ inspectors, "who *shall* be charged with the duty" of inspecting aircraft *"in use"* and reporting to the Administrator in order for him to determine whether or not such aircraft, its engines, etc., *"are in safe condition"*; and by the same section, whenever an inspector finds that an aircraft or equipment *"is not in condition for safe operation,"* the carrier is notified and "for a period of five days thereafter, such aircraft or equipment *shall not be used* in air transportation or in such manner *as to endanger air*

*transportation,* unless found by the Administrator or his inspector to be in condition for safe operation."

By section 1429 provision is made for re-inspection and re-examination, and if the Administrator determines *"that safety in air commerce and air transportation and the public interest requires,"* the Administrator may amend, modify, suspend or revoke any type of certificate, etc. And by the same section, any person whose certificate is thus affected by an order of the Administrator, may have the National Transportation Safety Board review the finding and modify or reverse the Administrator's orders *"if it finds the safety in air commerce or air transportation and the public interest do not require affirmation of the Administrator's order."* And by the same section, the Board may find that an emergency exists and *"safety in air commerce or air transportation requires the immediate effectiveness"* of the Administrator's order, in which event the order becomes immediately effective.

On top of the foregoing, the Report of the Congressional Committees accompanying the 1958 Act says, *inter alia,* that Title VI "deals primarily with the powers and duties of the Administrator relating to *minimum standards of safety."*

But the requirement of safety is not limited to subchapter VI of the Federal Aviation Act of 1958. It permeates the whole Act. By § 1301 (subdivision 4), "air commerce" is defined to mean *any* operation of aircraft which directly affects or which *"may endanger safety"* in air commerce; by § 1301(24) "navigable air space" includes air space needed to insure *"safety* in take-off and landing"; by § 1302 it is made mandatory for the Board to consider, *inter alia* (subdivision b), "the regulation of air transportation in such manner as to \* \* \* *assure the highest degree of safety"* in air transportation, and ((e)) "the *promotion of safety* in air commerce"; by § 1303 the Administrator (now Board) shall consider "the regulation of air commerce in such manner as to best promote its development and *safety"*; by §

1348 rules and regulations are authorized *"to insure safety,* governing the flight of aircraft" for the *"protection of persons * * *"* on the ground" and the *"prevention of collision* between aircraft * * *"*; by § 1351 and § 1463 the United States Weather Bureau is under a duty to provide information "in order *to promote safety* and efficiency in air navigation *to the highest possible degree"*; by § 1371 no air carrier can engage in *"any* air transportation" without a regular issued certificate, and by subdivision (n)(5) the Board can immediately suspend a supplemental air carrier certificate if required *"in the interest of * * * safety of the public"*; by § 1374 it is made "the *duty* of every air carrier * * * *to provide safe and adequate service"*; by § 1402 rules and regulations are authorized for the registration of engines and other equipment *"in the interest of safety"*; by § 1404 certain security holders are exempted from liability for "injury to or death of persons"; by § 1485(a) the Administrator is authorized to issue emergency orders, rules, and regulations without hearing or notice "as may be essential *in the interest of safety"*; by § 1485(e) it is made the duty of every person subject to the Act to comply with the rules, regulations, orders and terms of certificates made or issued under the Act. And by § 1508, to eliminate all doubts that the provisions of the Act should control over any other assertion of jurisdiction or authority over the control of operation of aircraft, Congress declared, *"The United States of America is declared to possess and exercise complete and exclusive national sovereignty in the airspace of the United States * * *."*

That additional rights and remedies were granted by Congress by the imposition of duties contained in the foregoing sections is further evidenced by the provisions of section 1106 of that Act (49 U.S.C. § 1506), which reads as follows:

"Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law

or by statute, *but the provisions of this chapter are in __addition__ to such remedies."*

If the foregoing repetitive emphases by Congress on *safety* does not refer to the *safety of individuals* and does not impose a duty, the violation of which is a tortious or actionable wrong, then one is led to wonder just whose *safety* Congress was talking about, or if there is some safety that is in the public interest which does not include the saving of human lives. So often, unfortunately, lawyers and judges overlook the fundamentals. There could not be a plainer creation of a duty to provide safety than is set forth in the Act and regulations, and plainly Congress intended to grant remedies for the wrongs prohibited as the provisions of Chapter VI "are in addition" to state remedies.

To borrow from John Marshall in Gibbons v. Ogden, 22 U.S. 1 at 220, 6 L.Ed. 23, a contrary conclusion would take such a course of refined and metaphysical reasoning to explain away the plain duties imposed by that statute "and leave it a magnificent structure indeed to look at but totally unfit for use." The fundamentals here are that a duty is imposed by law; that the complaint alleges that defendants violated that duty; and that the plaintiffs were injured by that violation. Those three things are, and always have been, the essential elements for a tort liability. Clearly, the congressional policy of safety in flight so oft repeated in the Federal Aviation Act, as above quoted, and the grants of jurisdiction of 28 U.S.C. §§ 1331(a) and 1337, will be carried out by denying the motion to dismiss and will be defeated by granting it.

As recently as 1971, in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, Justice Harlan said in concurring:

". . . in suits for damages based on violations of federal statutes lacking any express authorization of a damage remedy, this Court has autho-

rized such relief where, in its view, damages are necessary to effectuate the congressional policy underpinning the substantive provisions of the statute."

As long ago as 1803 in Marbury v. Madison, 1 Cranch 137, at 163, 5 U.S. 137, 2 L.Ed. 60, at 69, construing a statute creating the Office of Justice of the Peace, authorizing a commissioned appointment for five years, John Marshall said:

> "And as the law creating the office, gave the officer a right to hold for five years, independent of the executive, the appointment was not revocable, but vested in the officer legal rights, which are protected by the laws of his country.
>
> "To withhold his commission, therefore, is an act deemed by the court not warranted by law, but violative of a vested legal right.
>
> "This brings us to the second inquiry; which is,
>
> "2d. If he has a right, and that right has been violated, do the laws of this country afford him remedy?
>
> "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection. In Great Britain the king himself is sued in the respectful form of a petition, and he never fails to comply with the judgment of his court.
>
> "In the 3d vol. of his Commentaries, p. 23, Blackstone states two cases in which a remedy is afforded by mere operation of law.
>
> " 'In all other cases," he says, 'it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit, or action at law, whenever that right is invaded.' "

Case Co. v. Borak (1964) 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, was a suit for damages for false and mis-

leading statements prohibited by the Securities and Exchange Act and regulations thereunder, but which made no specific provision for a private right of action. The court held that inasmuch as the Act had among its chief purposes "the protection of investors," it "certainly implies the availability of judicial relief where necessary to achieve that result"; and further said (p. 433 to p. 434, 84 S.Ct. pp. 1560, 1561):

> "We, therefore, believe that under the circumstances here it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose. As was said in Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942):
>
> > " 'When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted.'
>
> "See also Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213, 65 S.Ct. 235, 237, 89 L.Ed. 187 (1944); Deitrick v. Greaney, 309 U.S. 190, 201, 60 S.Ct. 480, 485, 84 L.Ed. 694 (1940). It is for the federal courts 'to adjust their remedies so as to grant the necessary relief' where federally secured rights are invaded. 'And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.' Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). Section 27 grants the District Courts jurisdiction 'of all suits in equity and actions at law brought to enforce any liability or duty created by this title. . . .'

In passing on almost identical language found in the Securities Act of 1933, the Court found the words entirely sufficient to fashion a remedy to rescind a fraudulent sale, secure restitution and even to enforce the right to restitution against a third party holding assets of the vendor. Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). This significant language was used:

> " 'The power *to enforce* implies the power to make effective the right of recovery afforded by the Act. And the power to make the right of recovery effective implies the power to utilize any of the procedures or actions normally available to the litigant according to the exigencies of the particular case.' At 288 of 311 U.S., at 233 of 61 S. Ct.

"See also Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L. Ed. 1332 (1946); Mitchell v. Robert De Mario Jewelry, Inc., 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245 (1948)."

"Nor do we find merit in the contention that such remedies are limited to prospective relief. This was the position taken in Dann v. Studebaker-Packard Corp., 6 Cir., 288 F.2d 201, where it was held that the 'preponderance of questions of state law which would have to be interpreted and applied in order to grant the relief sought . . . is so great that the federal question involved . . . is really negligible in comparison.' At 214. But we believe that the overriding federal law applicable here would, where the facts required, control the appropriateness of redress despite the provisions of state corporation law, for it 'is not uncommon for federal courts to fashion federal law where federal rights are concerned.' Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). In addition, the fact that questions of state law must be decided does not change the character of the right; it remains federal. As Chief Justice Marshall said in Osborn v. Bank of United States, 9 Wheat. 738 [22 U.S. 738] 6 L.Ed. 204 (1824):

> " 'If this were sufficient to withdraw a case from the jurisdiction of the federal Courts, almost every case, although involving the construction of a law, would be withdrawn . . . .' At 819–820."

The "Federal statute (which) provides the general right to sue," and which was relied on in Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, was 28 U.S.C. § 1331 permitting suits of a civil nature where the matter and controversy arises under the Constitution or laws of the United States (p. 683, 66 S.Ct. 773). Damages were sought for violation of the Fourth and Fifth Amendments to the United States Constitution. The question as to whether or not a *right of action* was *created* by the Amendments and *jurisdiction given* was squarely raised by the Government's contention that although the amendments prohibit denial of due process and unreasonable searches and seizures, the Constitution does "not expressly provide for recovery in money damages for violations of the Fourth and Fifth Amendments and Congress has not yet enacted a statute that does so provide."

In 1940, in Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694, Chief Justice Stone, in a case involving misconduct of one of the directors of a national bank, in connection with a promissory note, held that while the remedy sought was not provided by the Act there involved, the right of action nevertheless lay; said Justice Stone (p. 200, 60 S.Ct. p. 485), "it is the federal statute which condemns as unlawful respondent's acts. The extent and nature * * * of this condemnation, though left by the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has

adopted, see, Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313." In the latter case, Commissioners of Jackson County, *supra*, the court held that while Congress had not specifically defined the relief to be granted by loss suffered for denial of the tax exemptions, the remedial details were left to judicial determination since the origin of the right to be enforced was an Indian treaty with the United States.

In Tunstall v. Brotherhood (1944), 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (a companion case to Steele v. L.&N.R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173), plaintiff sought injunction and damages under the Railway Labor Act for color discrimination by the Union. The Act provided no remedy but did prohibit discrimination. The court said (p. 213, 65 S.Ct. p. 237):

> "We also hold that the right asserted by petitioner which is derived from the duty imposed by the Railway Labor Act on the Brotherhood, as bargaining representative, is a federal right *implied from the statute* and the policy which it has adopted. *It is the federal statute which condemns as unlawful the Brotherhood's conduct.* 'The extent and nature of the legal consequences of this condemnation though left by the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has adopted.' Deitrick v. Greaney, 309 U.S. 190, 200–201, 60 S.Ct. 480, 484, 485, 84 L.Ed. [694;] 1036; Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 176–177, 63 S.Ct. 172, 173, 174, 87 L.Ed. 165; cf. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. *The case is therefore one arising under a law regulating commerce of which the federal courts are given jurisdiction* by 28 U.S.C. § 41(8), Judicial Code § 24(8); Mulford v. Smith, 307 U.S. 38, 46, 59 S.Ct. 648, 651, 83 L.Ed. 1092; Peyton v. Railway Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525; cf. Illinois Steel Co. v. Baltimore & O.R.Co., 320 U.S. 508, 510–511, 64 S.Ct. 322, 323, 324 [88 L.Ed. 259.]."

It cannot be argued that the *implied* right protected there was greater than the rights of 49 people in an airplane *not to be killed*, where the Act specifically and repeatedly commands the duty of *safety*.

The case of Fitzgerald v. Pan American World Airways (2 Cir., 1956), 229 F.2d 499, involves the question as to whether or not 49 U.S.C. § 484, which prohibits discrimination, gave a right of action in the federal courts for alleged violation of that section; it held that the prohibition by implication created a right of action. The court said:

> "Frank, Circuit Judge. (page 501)

> "Section 622(a) makes it a federal crime to violate, *inter alia,* Section 484(b). The latter section is for the benefit of persons, including passengers, using the facilities of air carriers. *Consequently, by implication, its violation creates an actionable civil right for the vindication of which a civil action may be maintained by any such person who has been harmed by the violation.* As we said in Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691, 694: 'Although the Act does not expressly create any civil liability, we can see no reason why the situation is not within the doctrine which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal.' See also Fischman v. Raytheon Mfg. Co., 2 Cir., 188 F.2d 783, 787; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 427, 154 A.L.R. 1285; Restatement of Torts, Section 286; Morris, The Relation of Criminal Statutes to Tort Liability, 46 Harv.L.Rev. (1933) 453; Lowndes, Civil Liability Created by

Criminal Legislation, 16 Minn.L.Rev. (1932) 361."

(pages 501–502)

*"We think it created a new federal right. Although a right created by a federal statute covers the same ground as a right already existing under the common law of the states and territories, a suit based on that federal statute is one 'arising under' a law of the United States, so that a federal district court has jurisdiction under 28 U.S.C. § 1331.* See, e. g., Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187; Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691, 694; Note, 48 Col. L.Rev. (1948) 1090. No federal common law of torts exists; *when Congress enacts legislation rendering it tortious to do what is already a state common-law tort, a suit based on that legislation is within 28 U.S.C. § 1331.'*

\*     \*     \*     \*     \*     \*

"Defendant also contends that the sole non-criminal federal remedy for a violation of any provisions of the Act is to be found in Section 642, i. e., a complaint to the Civil Aeronautics Board which must investigate the complaint and, if the facts warrant, must issue an order compelling compliance with the violated provisions of the Act. We cannot agree. As such an order must look to the future, obviously it cannot afford redress to one harmed by a violation of Section 484(b). For, whatever may be true of the flight of a plane, undeniably (outside of fiction or 'pure' physics) the flight of time—despite the poet Hood's earnest prayer—is always, alas for us mortals, irreversible. Indeed, Aristotle remarked that 'Agathon is right in saying, "For this alone is lacking even to God, To make undone things that have once been done."'"

Wills v. Trans World Airlines (S.D. Cal., 1961), 200 F.Supp. 360; in this case an action was brought alleging violation of 49 U.S.C. § 484(b), which is the section of the Federal Aviation Act prohibiting discrimination. The court there declined to accept the doctrine that the Federal Aviation Act was enforceable only *in futuro,* and said in that respect: (p. 364)

"As already suggested, the first consideration which argues that a Federal cause in behalf of the passenger fulfills a major purpose of the Act is the fact that, although the statute confers upon the administrative agency power to investigate and render prospective relief to protect from impending statutory violation, there is no administrative authority to award damages or other relief to a passenger for past wrongs. [See: 49 U.S.C.A. sec. 1482; Fitzgerald v. Pan American World Airways, supra, 229 F.2d at 502; S.S.W., Inc. v. Air Transport Ass'n of America, 89 U.S.App.D.C. 273, 191 F.2d 658, 663 (D.C.Cir., 1951), cert. denied 343 U.S. 955, 72 S.Ct. 1049, 96 L.Ed. 1355 (1952).]"

The court further stated: (p. 364)

"This doctrine, that specific statutory authority is not an essential prerequisite to the existence of power in the Federal courts to grant relief in damages to enforce the object or purposes of a particular statute, has ample support in precedent. As Mr. Justice Frankfurter has put it:

"'A duty declared by Congress does not evaporate for want of a formulated sanction. When Congress has "left the matter at large for judicial determination", our function is to decide what remedies are appropriate in the light of the statutory language and purpose and of the traditional modes by which courts compel performance of legal obligations \*   \*   \* If civil liability is appropriate to effectuate the purposes of a statute, courts are not denied this traditional remedy because it is not specifically authorized.' [Montana-Dakota Utilities Co. v. Northwestern Public Service

Co., 341 U.S. 246, 261, 71 S.Ct. 692, 700, 95 L.Ed. 912 (1951) (dissenting opinion); see: Tunstall v. Brotherhood, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); see also United Public Workers of America v. Mitchell, 330 U.S. 75, 93, 67 S.Ct. 556, 91 L.Ed. 754 (1947)]"

"Indeed, since the consequences which turn upon violation of a statute are considered as largely determining the extent of obedience, 'liability to private suit * * * may be as potent a deterrent as liability to public prosecution * * *.' [Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 41–42, 36 S.Ct. 482, 485, 60 L.Ed. 874 (1916).]"

Flores v. Pan American World Airways (D.Puerto Rico, 1966), 259 F. Supp. 402, was a decision on the merits in an action for damages for refusing to honor the plaintiff's airplane tickets, and for personal injuries resulting when a valise was thrown at her when presenting the tickets. The court held it did have jurisdiction in that the Federal Aviation Act did create a cause of action for damages which was cognizable in the federal courts, and followed Wills v. Trans World Airlines, Inc. (S. D.Cal., 1961), 200 F.Supp. 360.

The Town of East Haven, et al. v. Eastern Airlines, Inc. (D.Conn., 1968), 282 F.Supp. 507, was a case where the plaintiffs sought injunctive relief *and damages* because of injuries sustained from jets flying in and out of the adjacent airport. The court held that the action was maintainable against the Airlines in that the Federal Aviation Act did "give rise to a private right of action for trespass and nuisance by reason of alleged deviations of planes from approved flight paths," and held that jurisdiction exists for that purpose under 28 U.S.C. § 1331 or 28 U.S.C. § 1337. It declined to follow the cases which held that enforcement of the provisions to the Act which made prohibitions was enforceable only prospectively and approved the doctrine of Fitzgerald v. Pan American Airways, *supra*.

Mortimer, et al. v. Delta Air Lines (N.D.Ill., 1969), 302 F.Supp. 276. In that case the plaintiffs sought an injunction as well as compensatory and *punitive damages* for being barred from the defendant's over-sold flight. The court held that jurisdiction did exist by reason of 28 U.S.C. § 1337 and the Federal Aviation Act.

The court not only followed the *Wills, Fitzgerald* and *East Haven v. Eastern Airlines* cases, *supra*, but also held that while the regulations provide an administrative remedy for securing compensation, which is referred to as "denied boarding compensation," the action could nevertheless be maintained.

The Ninth Circuit in two cases, Furumizo v. United States (1967), 381 F. 2d 965, and Stork, et al. v. United States (1970), 430 F.2d 1104, held the United States liable in death cases under the Federal Tort Claims Act for its employees' negligence under the Federal Aviation Act and the regulations promulgated thereunder.

It is clear that the grant of jurisdiction contained in 28 U.S.C. § 1337 over "*any* civil action or proceeding arising under *any* Act of Congress regulating commerce . . . ." and in 28 U.S. C. § 1331(a) "of *all* civil actions wherein the matter * * * arises under the Constitution, laws, or treaties of the United States," is a greater grant of jurisdiction than that contained in the Federal Tort Claims Act.

Neither Rosdail, et al. v. Western Aviation, et al. (D.Colo., 1969), 297 F. Supp. 681, nor Rogers v. Ray Gardner Flying Service (5 Cir., 1970), 435 F.2d 1389, nor McCord v. Dixie Aviation Corp., et al. (10 Cir., 1971), 450 F.2d 1129, are in point as each of them turned on whether or not sub. 26 of the definitional section of the Federal Aviation Act [49 U.S.C. § 1301 sub. 26] superseded the state law of bailment so as to charge a bailor under the state law with the acts of a non-agent bailee. In

the *McCord* case the court in effect approved the doctrine of the *Fitzgerald* and *Wills* cases, *supra,* by pointing out that in each of them the court was concerned with *"active"* violations of specific sections.

Killian v. Frontier Airlines, Inc. (D. Wyo., 1957), 150 F.Supp. 17, is not in point for the reason that the controversy there involvd an interstate shipment in air freight and the tariffs therefor, which the plaintiff had consented to, as well as to the method of reviewing them.

Yelinek v. Worley (E.D.Va.1968), 284 F.Supp. 679, is wholly unpersuasive in view of the repeated expression of the Supreme Court and the other above-cited cases.

As Justice Harlan said in the *Bivens* case, *supra,* "For people in Bivens' shoes, it is damages or nothing"; so here, for people in the shoes of Gabel's dependents there is damages or nothing.

█ In none of the above cases pertaining to jurisdiction was there a specific federal statute defining the measure of damages. Thus the Court cannot assume in view of the language of the Act hereinabove quoted that Congress created a right without a remedy, and the Court will, therefore, look to the applicable state law to determine the measure of damages. But the question of the amount of damages is not involved in the questions determined here.[4]

The very first Congress of the United States anticipated just such a situation and provided for it in Section 34 in the Federal Judiciary Act of 1789, 1 Stat. 73; formerly R.S. 721; later 28 U.S.C. § 725; now 28 U.S.C. § 1652. The only difference between the present statute under the 1948 revision and the statute originally enacted is a slight immaterial change in the first clause and the inclusion in the original statute of the words "in trials at common law." The statute now reads:

28 U.S.C. § 1652.

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

Erie Railroad Co. v. Tompkins (1938), 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and a myriad of cases citing it since then, hold that, while a federal court has jurisdiction under the Diversity Act, it could not and cannot create a general rule of so-called common law defining either liability itself or the quantum measure of damages as a result thereof, but must follow the state law *because the federal law was silent as to both.* But here the federal law is not silent as to the duties imposed upon the operators of aircraft and the corresponding rights of persons. The *source of the right to recover* is found in the duties imposed, and the rights flowing therefrom contained in the Federal Aviation Act passed under the commerce clause. And this Court has jurisdiction under both §§ 1331 and 1337 of 28 U.S.C. to determine whether or not the plaintiffs are entitled to recover, i. e., liability, but the *source of the right to measure the quantum* or the value and money damages of the right to recover is found only in the applicable state law.

█ The Court also has pendent jurisdiction, even if the right to recover is under state law of Air West.

---

4. Moragne v. States Marine Lines (1970), 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, suggests the possibility that no measure of damage statute is required inasmuch as Congress by the Federal Aviation Act took control of the law of the air and there is as much need in that respect as there is for admiralty law to be a "system of law co-extensive with and operating uniformly in the whole country."

There was *one* collision.

There is but one "common nucleus of operative fact." United Mine Workers v. Gibbs (1966), 383 U.S. 715–725, 86 S. Ct. 1130, 1138, 16 L.Ed.2d 218. There was a single wrongful invasion of a single primary right of the plaintiffs, viz., the right of the plaintiffs to have the decedent continue to live. Whether the acts constituting invasion and destruction of that right were one or many, simple or complex, is immaterial. The commonality of proof required makes the suit against Air West and the United States and the individual Schiess but one constitutional "case," and joinder of parties is not to be treated differently than joinder of issues. United Mine Workers v. Gibbs, *supra;* Astor-Honor, Inc. v. Grosset & Dunlap, Inc. (2 Cir. 1971), 441 F.2d 627; Hipp v. United States (E.D.N.Y.1970), 313 F.Supp. 1152.

The United States is a party and an indispensable one to the adjudication of the issues raised on the complaint in this case and to the issues raised by the United States properly impleading Air West for hull damage and indemnity and Air West properly impleading the United States for its hull damage and indemnity. This Court has jurisdiction of the United States, and the United States cannot be forced to try its cause in the state courts. The trial of necessity must determine the fault, if any, of Air West. It would be a rank injustice to require each of the cases arising out of the 50 deaths to be tried twice, once here and once in the state courts where each defendant would have a chance to and would blame the other. In this forum, conceivably, the United States might be exculpated and in the state forum Air West might be exculpated, thus leaving the plaintiffs nothing.

The motion of Air West to dismiss is denied.