Helen Wilkins OBENSHAIN, Executrix of the Estate of Richard D. Obenshain, Deceased

v.

John T. HALLIDAY, Administrator of the Estate of Richard F. Neel, Deceased, et al.

No. 80–0658–A.

United States District Court, E. D. Virginia, Alexandria Division.

Dec. 9, 1980.

Robert W. Lewis, Arlington, Va., for plaintiff.

E. Waller Dudley, Alexandria, Va., Frank E. Brown, Jr., Arlington, Va., for defendant John T. Halliday.

Thomas K. Berger, Asst. U. S. Atty., Alexandria, Va., for defendant United States of America.

John J. Brandt, Arlington, Va., for defendant Class I Aviation, Inc.

Stephen K. Fox, Fairfax, Va., for defendant Richard F. Neel.

Gerald R. Lear, Alexandria, Va., for defendants Bd. of Supervisors of Chesterfield County and Dennis A. Parker.

Gregory L. Murphy, Alexandria, Va., for defendant John Purdy.

Anthony E. Grimaldi, Fairfax, Va., for defendant Crouse Hinds Sepco Corp.

Charles F. Geschickter, Jr., Fairfax, Va., for defendant Administrator of the Estate of R. A. Edelen.

## MEMORANDUM OPINION

### I. STATEMENT OF PROCEEDINGS

RICHARD L. WILLIAMS, District Judge.

This lawsuit arises from the death of plaintiff's decedent, Richard D. Obenshain, in an airplane crash near Chesterfield County Airport, Virginia, on August 2, 1978. The plaintiff alleges that, unknown to Mr. Obenshain and to the pilots of the plane, the runway lights at the Chesterfield County Airport were out of order. The failure of these lights allegedly caused pilot disorientation and the crash of the airplane.

The plaintiff filed this action against the United States of America; Chesterfield County (the County); the Administrator of the Estate of pilot Richard F. Neel; the owner of the airplane, John Purdy; Class I Aviation, the lessee of the airplane; Crouse Hinds Sepco Corp., the manufacturer of the runway lights; and Dennis Parker, the manager of the Chesterfield County Airport.

The plaintiff has based this court's jurisdiction on the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671 et seq., (1976), and upon the Federal Aviation Act, 49 U.S.C. § 1301 et seq. (1976 & Supp.1980).

For the purposes of this Memorandum it is necessary only to discuss the plaintiff's claims against the United States of America and the County.

The plaintiff claims that the United States contracted with the County to help the County financially in building, operating and maintaining the airport in a safe manner. Under that contract, the plaintiff claims, the United States and the County owed a duty to notify promptly all pilots of any safety hazards. Saying this was not done in the case at bar, when the runway lights were out of order, the plaintiff has alleged that the United States and the County exhibited a reckless disregard of the safety of the airport's users, and seeks to enforce the terms of the contract as a third party beneficiary (Count VII). The plaintiff also claims the United States and the County violated provisions of the Federal Aviation Act and safety regulations and attempts to assert a cause of action under these (Count VIII). Furthermore, the plaintiff asserts a cause of action based on strict liability against the United States and the County for allegedly maintaining unreasonably dangerous conditions at the airport (Count IX), and asserts negligence claims against the County (Count VI) and the United States (Count X).

Against the County the plaintiff also claims a breach of warranty on the theory that the County expressly and impliedly warranted that the airport was safe (Count V).

The County has moved for summary judgment pursuant to Rule 56, Fed.R. Civ.P., alleging that all claims brought by the plaintiff against it are barred under the

doctrine of sovereign immunity or are "otherwise barred." Specifically, the County claims that it enjoys sovereign immunity from Counts V through IX of the plaintiff's Amended Complaint, which the defendant contends allege negligence in some form. Counties, it claims, are political subdivisions of the state and cannot be sued for injuries resulting from negligence of their officers or servants.

Secondly, the County claims that even if the plaintiff has legitimate claims sounding other than in tort, she is barred from suing because she has not followed the statutory procedures proscribing the manner in which counties may be sued.

In addition, the County claims that Count IX of the Amended Complaint, alleging a cause of action against the County based upon strict liability in tort, should be dismissed because such a cause of action is not recognized in Virginia.

Further, the County claims that Count VIII, alleging a cause of action based upon a violation of the Federal Aviation Act, should be dismissed claiming no private right of action can be implied under this Act.

Lastly, the County moves that Count VII of the Complaint, alleging a cause of action against the County as third party beneficiary to a contract between Chesterfield County and the United States of America be dismissed since the plaintiff is merely an "incidental" beneficiary and has no standing to sue.

## II. OPINION

### A. There is No Implied Cause of Action Under The Federal Aviation Act

The Federal Aviation Act, 49 U.S.C. § 1301, et seq., does not expressly provide for a private cause of action for violations of the Act or rules promulgated under it. Plaintiff, however, alleges that a cause of action may be implied under the doctrine of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

In *Cort*, the Supreme Court declined to imply a shareholder's right of action for damages against corporate directors under the Federal Election Campaign Act, which prohibited certain corporate contributions. The Court set forth the following four-pronged test to determine when a court should imply a private cause of action: (1) is the plaintiff a member of a class "for whose especial benefit the statute was enacted"?; (2) is there "any indication or legislative intent, explicit or implicit," to create or deny a remedy?; (3) would implying a private cause of action be consistent with the legislative scheme?; and (4) "is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer" a federal cause of action? *Id.* at 78, 95 S.Ct. at 2087. (Citations omitted).

■ The Third Circuit and various district courts have applied the *Cort* test to the Federal Aviation Act and found no cause of action. *Rauch v. United Instruments, Inc.*, 548 F.2d 452 (3d Cir. 1976); *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332 (3d Cir. 1975); *Heckel v. Beech Aircraft Corp.*, 467 F.Supp. 278 (E.D.Pa.1979); *Snuggs v. Eastern Airlines, Inc.*, 13 Av.Cas. (CCH) 17,631 (S.D.Fla.1975). This court concurs.

Using the *Cort* analysis, it is clear that the plaintiff is a member of a class for whom the safety regulations of the Act were enacted. The other three *Cort* factors, however, do not favor implying a cause of action.

The second factor, legislative intent, has been found to be dispositive in recent Supreme Court cases. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Transamerica Mortgage Advisers v. Lewis*, 441 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). In those three cases, the Court stated that in determining legislative intent the initial examination should be of the statute's language. *Accord, Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Ernst & Ernst v. Hochfelder*, 425

U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), *rehearing denied*, 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). If the statute is silent, the legislative history may be examined. *Transamerica Mortgage Advisers v. Lewis, supra; Touche Ross & Co. v. Redington, supra; Cannon v. University of Chicago, supra.* In *Touche Ross, supra* at 575–76, 99 S.Ct. at 2489, the Court stated that while the factors of *Cort* are "relevant" in determining if a cause of action is to be implied, they are not each entitled to equal weight.

An examination of the language of the Act reveals no intent to create a private right of action. Section 1106, 49 U.S.C. § 1506, which plaintiff claims evidences such an intent, appears more to be a "savings" provision intended to preserve state causes of action, federal antitrust liability and so forth.

The legislative history of the Act is silent regarding the creation of a federal cause of action for survivors of victims of aircraft accidents. *See* 1958 U.S.Code Cong. & Ad. News, p. 3741, 85th Congress, Second Session. The Supreme Court has admonished that "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross, supra*, at 571, 99 S.Ct. at 2486.

Indeed, eleven years after the passage of this legislation, Congress considered and rejected a bill which would have created a federal cause of action and exclusive federal jurisdiction for injuries arising out of aircraft crashes. *See, Aircraft Crash Litigation Hearings before Subcommittee on Improvements in Judicial Machinery on S. 961*, 91st Congress, First Session (1969); *Aircraft Crash Litigation Hearings before Subcommittee on Improvements in Judicial Machinery on S. 3305 and S. 3306*, 90th Congress, Second Session (1968). An assumption was made in these hearings that presently aircraft disaster litigation occurs in federal courts because of diversity of parties, not because a non-exclusive federal cause of action exists. *See, e. g., Aircraft Crash Litigation Hearings before Subcommittee on Improvements in Judicial Machin-*

*ery on S. 3305 and S. 3306*, 90th Congress, Second Session (1968), at 64, 69. Congress's failure to adopt a specific proposal authorizing private rights must be taken as evidence of an intent to preclude such rights. *National R. R. Passenger Corp. v. National Ass'n. of R. R. Passengers (Amtrak)*, 414 U.S. 453, 461, 94 S.Ct. 690, 694, 38 L.Ed.2d 646 (1974).

The third factor, whether a private remedy is "consistent with the underlying purposes of the legislative scheme", requires an examination of the adequacy of existing remedies to serve the federal interest. Indeed, unless necessary to fulfill Congress's purpose in enacting the legislation, no implied cause of action should be found. *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 41, 97 S.Ct. 926, 949, 51 L.Ed.2d 124 (1977); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 1202, 51 L.Ed.2d 480 (1977). This court agrees with the reasoning in *Moungey v. Brandt*, 250 F.Supp. 445, 451 (W.D.Wis.1966), cited with approval in *Yelinek v. Worley*, 284 F.Supp. 679, 681 (E.D.Va.1968):

> The national interest in safety in civil aeronautics is adequately protected by the network of statutory and administrative procedures and sanctions expressly created by the Federal Aviation Program.... No persuasive reason suggests itself why the efficacy of the Program need be fortified by the creation, by implication, of a civil remedy in the federal court.

The fourth factor, whether the cause of action is one traditionally relegated to state law, also here mitigates against implying a cause of action. While aviation is strongly regulated by the federal government, § 1106 of the Act explicitly preserves state remedies. Negligence, breach of warranty and breach of contract are causes of action recognized in the courts of Virginia. No additional remedy appears to be called for.

Before *Cort v. Ash* was decided, this court in *Yelinek v. Worley, supra*, held there was no private federal cause of action for damages or personal injury under the Federal Aviation Act, observing that imply-

ing a civil remedy would be "foreign to the Congressional purposes for enactment of the Act." *Id.* at 681. *Accord, Moungey v. Brandt, supra; Moody v. McDaniel,* 190 F.Supp. 24 (N.D.Miss.1960); *Rosdail v. Western Aviation, Inc.,* 297 F.Supp. 681 (D.Colo.1969). Applying an analysis different in form, this court reaffirms that decision. Accordingly, the defendant's motion as to Count VII of plaintiff's Complaint is granted.

### B. *Jurisdiction Of This Defendant Is Properly Based On Pendent Party Jurisdiction*

■ Since plaintiff has no cause of action under the Federal Aviation Act, there is no federal question jurisdiction as to the County. Furthermore, there is no diversity of citizenship between the plaintiff and the County. The plaintiff seeks, however, to join this non-diverse co-defendant in a suit against the United States of America under the Federal Tort Claims Act. She thus not only introduces state law claims, but also attempts to bring in a defendant over whom no independent federal jurisdiction exists. However, this court has determined that under the doctrine of pendent party jurisdiction it is both permissible and desirable to retain the County as a party defendant.

The Supreme Court, in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), held that a federal court had power to adjudicate both a federal and a state claim asserted against a defendant if the "federal claim [has] substance sufficient to confer subject matter jurisdiction on the Court [and] . . . [t]he state and federal claims . . . derive from a common nucleus of operative facts." *Id.* at 725, 86 S.Ct. at 1138.

■ The decision to exercise this pendent jurisdiction is a matter of discretion for the trial court. In exercising its discretion, the court is to look to the "considerations of judicial economy, convenience and fairness

to litigants." *Id.* at 726, 86 S.Ct. at 1139. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *Id.*

*Gibbs* deals only with the federal court's power to hear a claim which otherwise would not be before it. The power to hear a claim against a party over whom independent federal jurisdiction does not exist was addressed by the Supreme Court in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).[1] In that case, the Supreme Court held that a federal court had no jurisdiction to hear a claim against a non-diverse party over whom no independent federal jurisdiction existed pendent to a claim brought under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. However, the Court refused to rule out use of "pendent party jurisdiction" in all cases. In order for a federal court to hear such a claim against a non-diverse party, the court "must satisfy itself not only that Art. III [of the Constitution] permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence." *Id.* at 18, 96 S.Ct. at 2422. The Court specifically pointed, in *dicta,* to claims brought under the Federal Tort Claims Act—where the federal court's jurisdiction is exclusive—as potentially satisfying the tests of judicial economy and convenience.

The state law claims asserted here against the County meet the *Gibbs* test. There is subject matter jurisdiction under the Federal Tort Claims Act and a "common nucleus of operative fact" between claims against the United States of America and the County. It serves the policies of judicial economy, convenience and fairness to the litigants to have all the matters involved in this action aired in one case. And since under the Federal Tort Claims Act state law always is applied to a claim, the court is unable to avoid state law issues by dismissing the County.

---

1. *Aldinger* held, in addition to its holding on pendent jurisdiction, that a county was not a "person" under the Civil Rights Act of 1871, 42 U.S.C. § 1983. The Supreme Court, in *Monell*

*v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled this holding without disturbing the validity of the *Aldinger* analysis of pendent jurisdiction.

Further, this court agrees with the reasoning of Judge Warriner in *Wood v. Standard Products Co., Inc.*, 456 F.Supp. 1098 (E.D.Va.1978). Applying the rationale of *Aldinger*, Judge Warriner analyzed the Federal Tort Claims Act and determined that Congress, in providing for the exclusive jurisdiction of the federal courts, did not intend to restrict the joinder of other defendants. Therefore, Congress had "not expressly or by implication negated" jurisdiction over non-diverse co-defendants. *Wood* held that pendent party jurisdiction can exist over a non-diverse defendant when the federal court's jurisdiction is based on a claim against the United States of America pursuant to the Federal Tort Claims Act. This court is persuaded by that case and will follow it.

Therefore, having decided that pendent party jurisdiction is permissible under the circumstances, and having determined that the discretionary considerations laid out in *Gibbs* have been met, this court has decided it has jurisdiction to adjudicate the plaintiff's claims against the County.

### C. *Sovereign Immunity*

#### 1. *Eleventh Amendment*

Although the County has not expressly asserted it as a defense, this court now addresses the Eleventh Amendment[2] as it relates to this case since it could affect the court's subject matter jurisdiction.

■ The Supreme Court has held that the Eleventh Amendment is applicable only to states. *Lincoln County v. Luning*, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). In order for a subdivision or instrumentality of the state to be protected by the Eleventh Amendment it must be shown that any monetary award granted the plaintiff will have to be satisfied directly from the state's treasury:

[w]ithout considering situations in which suits against subdivisions might be barred under the eleventh amendment, we agree that ... it is "not a bar to an award that

**2.** That Amendment reads:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

may be satisfied out of a county's treasury."

*Burt v. Board of Trustees of Edgefield County School Dist.*, 521 F.2d 1201, 1205 n. 5 (4th Cir. 1975); *accord, Dyson v. Lavery*, 417 F.Supp. 103 (E.D.Va.1976).

Under Virginia law, the County has the power to raise money "to defray the County charges and expenses and all necessary charges incident to or arising from the execution of [its] authority." Va.Code Ann. § 15.1–544 (Repl.Vol.1973). Municipal corporations have specific authority to tax property, Va.Code Ann. § 15.1–841 (Repl. Vol.1973), and counties have the same power as municipal corporations. Va.Code Ann. § 15.1–522 (1980 Cum.Supp.). The County thus has the power to tax real and personal property within its jurisdiction.

While the property taxes are no doubt its major sources of revenue, the County is also granted various other taxing authority by the state. For example, it can impose a sales tax, Va.Code Ann. §§ 58–441.1–58–441.51 (1974 Repl.Vol. and 1980 Cum.Supp.), or it can tax alcohol, Va.Code Ann. § 4–38.

■ By virtue of this independent taxing power, the County has a source of revenue which is not dependent on monies from the state treasury, thus any judgment rendered against the County in this case can be satisfied from locally raised money. Accordingly, the County is not entitled to claim immunity under the Eleventh Amendment.

#### 2. *Common Law Sovereign Immunity*

■ In Virginia counties are immune from suits in tort for the negligence of their officers and agents. *Fry v. County of Albermarle*, 86 Va. 195, 9 S.E. 1004 (1889). *See also, Bergen v. Fourth Skyline Corp.*, 501 F.2d 1174 (4th Cir. 1974). The County claims this immunity as a defense to the plaintiff's tort claims against it. The plaintiff, however, asserts that the County has waived its right to claim sovereign immuni-

one of the United States by Citizens of another State or by Citizens or subjects of any Foreign State.

ty by virtue of operating an airport in interstate commerce.

The plaintiff also claims that because the County's alleged waiver arises from its entry into interstate commerce, which is regulated by the federal government, federal law will determine the waiver issue.

The plaintiff argues that *Parden v. Terminal Ry. of the Alabama State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) controls the decision in this case. *Parden* held that if a state's waiver or consent to be sued is alleged to have arisen "from an act not wholly within its own sphere of authority but within a sphere ... subject to the constitutional power of the Federal Government, the question whether the State's act constitutes the alleged consent is one of federal law." *Id.* at 196, 84 S.Ct. at 1215.

*Parden* involved a suit brought by employees of a state-owned railroad under the Federal Employees Liability Act, 45 U.S.C. § 51, *et seq.* The Supreme Court held that in operating a railroad, the state of Alabama had entered into an area that was subject to congressional regulation, and in which Congress had expressly created a federal right of action, and therefore had waived sovereign immunity:

> By empowering Congress to regulate commerce, then the States necessarily surrendered any portion of sovereignty that would stand in the way of such regulation. Since imposition of the FELA right of action upon interstate railroads is within the congressional regulatory power, it must follow that application of the Act to such a railroad cannot be precluded by sovereign immunity.

*Id.* at 192, 84 S.Ct. at 1212.

In subsequent cases, the Supreme Court has made clear that "a necessary predicate for [the waiver] doctrine of [*Parden*] was congressional intent to abrogate immunity conferred by the Eleventh Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct.

2666, 49 L.Ed.2d 614 (1976); *Employees of the Dept. of Health & Welfare of Mo. v. Department of Public Health & Welfare of Mo.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973).

The *Parden* rule has been applied by the Fourth Circuit in several cases. *See, e. g., International Longshoremen's Ass'n. v. North Carolina Ports Auth.*, 511 F.2d 1007 (4th Cir. 1975);[3] *Chesapeake Bay Bridge & Tunnel Dist. v. Lauritzen*, 404 F.2d 1001 (4th Cir. 1968).

However, having reviewed these authorities carefully, it is the opinion of this court that they are inapposite to the case at bar. In each case, the claim asserted was a federal one and thus it was plain that federal law would apply to any question of waiver of sovereign immunity.

■ In the present case the only tort claim against the County is a state one. The plaintiff is in this court only under the Federal Tort Claims Act, which applies the law of the place where the injury occurred. 28 U.S.C. § 2674 (1965); *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Piggott v. United States*, 480 F.2d 138 (4th Cir. 1973). All acts alleged in this action occurred within Virginia. Furthermore, the doctrine of *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) applies to pendent state claims. *Systems Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131 (3d Cir. 1977). There is no doubt that the law of Virginia applies.

■ In Virginia, counties are immune to actions in tort without statutory consent. *Fry v. County of Albermarle, supra; Mann v. County Board of Arlington*, 199 Va. 169, 98 S.E.2d 515 (1957). In *Mann*, the Supreme Court of Appeals of Virginia held that Arlington County not only had not waived its right to claim sovereign immunity, but also that the County was without power to do so:

3. In *International Longshoremen's Ass'n.*, the Fourth Circuit wrote at 1008 (quoting *Parden*):

> [W]hen a state leaves its traditional governmental activity and enters upon a proprietary

> enterprise that is ... "subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private personal corporation."

Arlington County being a political subdivision of the State, its freedom from liability for this tort may be likened to the immunity that is inherent in the State. It is fundamental and jurisdictional and could not be waived by the Board.

199 Va. at 175, 98 S.E. at 519.

Neither plaintiff nor the County claims that the legislature consented to the suit and, its sovereign immunity being non-waivable, the County stands immune to plaintiff's action against it in tort.

### 3. *Equal Protection Of The Laws*

Plaintiff has argued that the provision of state law providing for immunity to counties but not to municipalities when their employees act in a proprietary nature violates the Equal Protection Clause of the Fourteenth Amendment.

The states are given "a wide scope of discretion" in enacting legislation "which affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961). In *McGowan*, the Supreme Court determined that a state statute would not violate the Equal Protection Clause, unless the discriminatory classification "rests on grounds wholly irrelevant to the achievement of the State's objective." *Id.*

> State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be construed to justify it.

*Id.*

■ While conceding the fact that it is somewhat artificial to allow a plaintiff to recover against a municipality on a claim while forbidding recovery on the same claim against a county, this court is unconvinced that this distinction violates the Equal Protection Clause. Counties and municipalities are viewed as different entities under Virginia law. Virginia counties are integral parts of the State. They are created for the civil administration, in keeping with the policies of the State, of such powers as may be delegated and conferred upon them and serve as agencies of the State for the purposes specified, subject to such liabilities as are imposed upon them by law.

*Mann v. County Board of Arlington County*, 199 Va. 169, 173 (1957). Counties exist regardless of the desire of the citizens living within their boundaries.

Municipal corporations, on the other hand, are chartered by the General Assembly only upon the request of the citizens of a locality. Va.Code Ann. § 15.1–833, *et seq.* Furthermore,

> [a] municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization created almost exclusively with a view to the policy of the State at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice.

*Smith v. Kelley*, 162 Va. 645, 174 S.E. 842, 844 (1934).

There are other distinctions between municipal corporations and counties in Virginia; however, the basic one of creation by popular will is sufficient to justify different treatment for tort liability.

### 4. *The Plaintiff's Claims In Tort Are Dismissed*

Accordingly, defendant's motion as to Counts VI and IX of the Amended Complaint is granted.

### D. *Contractual Liability*

### 1. *Plaintiff Is Within The Time Allowed For Compliance With Virginia Code § 15.1–552*

The County alleges that the plaintiff has not complied with the requirements of Va.

Code Ann. § 15.1–552[4] (Repl.Vol.1973) and therefore, pursuant to § 15.1–553 (Repl.Vol. 1973), cannot maintain an action for contractual claims.

The defendant claims that plaintiff has not served written notice upon the Clerk of the County nor has it posted a surety bond. Affidavit of Nicholas M. Meiser. Defendant asserts that plaintiff's failure to comply with the requirements of § 15.1–552 bars any action which otherwise might have been brought against the County.

Plaintiff does not allege that she has complied to the letter with the requirements of § 15.1–552. Plaintiff instead claims that she notified the Board of Supervisors of Chesterfield County on June 6, 1980 of her claim against the County, that the claim was denied on June 26, 1980, and that an action was brought in this court within thirty days from the date of denial of that claim. Plaintiff's Amended Complaint for Wrongful Death, p. 4. Counsel for plaintiff stated in oral argument that the Clerk of the Board of Supervisors was notified "about the fact that we were exercising our right in filing a complaint. . . ." Transcript of Hearing on Defendant Chesterfield County's Motion for Summary Judgment, October 31, 1980, at p. 30. It is argued that serving the complaint in this action on the County Attorney within thirty days of the Board's denial gives notice to the Clerk regardless of the "written notice" requirements of § 15.1–552.

Gail C. Isaacson, an associate with the firm representing plaintiff, stated in an affidavit that she telephoned Nicholas Meiser, the Clerk of the Board of Supervisors for the County on October 8 regarding a surety bond. On October 10, she was informed that she would have to confer with Steven Micas, the County Attorney, regarding the bond. She attempted to speak with Micas on October 10 and 14, and on October 15 finally reached him and allegedly was told that the County Clerk would not set an amount for a surety bond.

*Karara v. County of Tazewell, Va.,* 450 F.Supp. 169 (W.D.Va.1978), *aff'd.,* 601 F.2d 159 (4th Cir. 1979) held that the procedure outlined in § 15.1–552 is "unquestionably bound up with the plaintiff's underlying substantive right against the County, and as such, is constitutionally controlling." *Id.* at 172.

■ However, it is unnecessary to reach that issue because this court interprets the statute as allowing a six-month period running from the date of disallowance of the claim to correct technical defects. Thus, to perfect an appeal from the Board's decision to this court, the plaintiff need only serve written notice upon the Clerk of the County and post a bond with sufficient surety, as provided by the statute, before December 26, 1980.

*Parker v. Prince William County,* 198 Va. 231, 93 S.E.2d 136 (1956) supports this interpretation of the statute. In that case, the issue before the Virginia Supreme Court of Appeals was whether the plaintiff had perfected his appeal within the time provided within § 15–259, the predecessor to § 15.1–552. The Court focused upon the language *"but in no case shall the appeal be taken after the lapse of six months from the date of the decision . . . ."* 198 Va. at 233, 93 S.E.2d at 138 (emphasis in original) and noted "the maximum period ... within which an appeal from the Board's decision was 'six months from the date of the decision'". *Id.* In *Parker,* the plaintiff did not

---

4. Section 15.1–552 provides:

When a claim of any person against a county is disallowed in whole or in part by the board of supervisors, if such person be present, he may appeal from the decision of the board to the circuit court of the county within thirty days from the date of the decision; if he be not present, the clerk of the board shall serve a written notice of the disallowance on him or his agent, and in that case he may appeal to the court from the decision within thirty days after service of such notice; but in no case shall an appeal be allowed in any case unless the amount disallowed exceeds ten dollars. Such appeal may be taken by causing a written notice thereof to be served on the clerk of the board and executing a bond to such county, with sufficient surety to be approved by the clerk, with condition for the faithful prosecution of such appeal, and the payment of all costs that shall be adjudged against the appellant by the court.

execute a proper bond with surety until nine and one-half months after the decision of the Board.[5]

The statutory period for perfecting an appeal under § 15.1–552 is, accordingly, six months and plaintiff may perfect her appeal by serving written notice on the Clerk of the County Board of Supervisors and executing a bond with surety to the County before December 26, 1980.

### 2. The Plaintiff Does Not Have Standing To Sue As Beneficiary Of A Third Party Contract

The plaintiff claims to be a third-party beneficiary of a contract[6] between the County and the United States of America and, as such, seeks to enforce that contract. Since the only basis for federal jurisdiction over the County is pendent party jurisdiction under the Federal Tort Claims Act, the plaintiff's standing to sue as a third-party beneficiary is determined under the law of Virginia. The fact that the United States of America is a party to the contract in question is irrelevant since its rights and responsibilities are not in issue. Rather, the issue here, standing to sue as a third party beneficiary, is identical to that presented to the Supreme Court in *Miree v. County of DeKalb, Ga.*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In *Miree*, the Court concluded:

> The operations of the United States in connection with FAA grants such as these are undoubtedly of considerable magnitude. However, we see no reason for concluding that these operations would be burdened or subjected to uncertainty by variant state-law interpretations regarding whether those with whom the United States contracts might be sued by third-beneficiaries to the contracts.

*Id.* at 30, 97 S.Ct. at 2494.

The Virginia Supreme Court has interpreted Va.Code Ann. § 55–22 (Repl.Vol. 1974) as requiring a third-party beneficiary to show that an agreement is clearly and definitely intended to bestow a direct benefit on him before he has standing to sue. *Richmond Shopping Center, Inc. v. Wiley N. Jackson Co.*, 220 Va. 135, 255 S.E.2d 518 (1979); *Valley Landscape Company, Inc. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977).

As the plaintiff argues, Virginia looks to the four corners of the contract in determining if a third party is an intended beneficiary. *Richmond Shopping Center, Inc. v. Wiley N. Jackson Co., supra.* Hence, as the contract is before the court, this issue is appropriate for resolution by summary judgment.

While plaintiff is incidentally benefitted by the contract, there is no language which shows clear and definite intent to benefit her in a manner which would grant her standing to sue. It is the belief of this court that Virginia, which imposes the identical standard used in Georgia, would sanction the reasoning of Georgia's highest court in *Miree v. United States*, 242 Ga. 126, 249 S.E.2d 573 (1978):

> Practically, every contract entered into by a county is for some public benefit because the only business of the county is public business.
>
> \*  \*  \*  \*  \*  \*
>
> The county's exposure of liability to every member of the flying public, their associates, the adjoining property owners, and all facilities thereon and connected therewith *which are necessary to serve the aeronautical users of the Airport* . . ., and will not permit any activity thereon which would interfere with its use for airport purposes.
>
> \*  \*  \*  \*  \*  \*
>
> The Sponsor will adopt and enforce such local rules, regulations, or ordinances as are reasonably necessary *to assure safe and efficient use of the Airport by the public.* (Emphasis added by plaintiff).

---

**5.** For a general discussion of appeals from Board decisions, *see* Hill, *Tort and Contract Claims Against Counties*, 7 Wm. & Mary L.Rev. 61, 64–66 (1966).

**6.** Plaintiff alleges the County covented to:
PART III—SPONSOR'S ASSURANCES
2. The Sponsor will operate the Airport as such *for the use and benefit of the public.*
 \*  \*  \*  \*  \*  \*
6. The Sponsor will *operate and maintain in a safe and serviceable condition* the Airport

and any other person who may happen to be in the area, is too broad to permit a contention that every injured party was an intended beneficiary under the public contract in this case.

*Id.* at 579.

Accordingly, Count VII of Plaintiff's Amended Complaint, as it relates to the County, is dismissed.

#### 3. *Breach of Warranty*

Without question, Virginia recognizes a cause of action for breach of an express or implied warranty. Va.Code Ann. § 8.01–223 (Repl.Vol.1977); § 8.2–318 (1965); *Gravely v. Providence Partnership*, 549 F.2d 958 (4th Cir. 1977); *Hayward v. Holiday Inns, Inc.*, 459 F.Supp. 634 (E.D.Va.1978). The Supreme Court of Appeals of Virginia has recognized that an action for breach of warranty may sound in either contract or tort. *Friedman v. Peoples Drug Stores*, 208 Va. 700, 160 S.E.2d 563 (1968); *E. I. DuPont De Nemours & Co. v. Universal Moulded Products Corp.*, 191 Va. 525, 62 S.E.2d 233 (1950).

· The Virginia Court held in *DuPont*, that breach of warranty and negligence actions could be joined in the same motion for judgment if the claims "arose from the same general cause of action, in a continuous cause of dealing with reference to one subject, and one judgment may be given." *Id.* at 538. At the same time, the Court, quoting Professor Williston, noted that " '. . . a warranty may sound in tort as well as in contract.' " *Id.* at 537. *Friedman* held that while Va.Code Ann. § 8–24 (1950) provided for a uniform statute of limitations for personal injury action regardless of whether the action sounded in tort or contract, "an action for breach of warranty involving personal injuries may give rise to two separate causes of action, one in tort and one in contract." *Id.* at 703. Furthermore, contributory negligence is unavailable to a defendant in a breach of warranty case. *Chestnut v. Ford Motor Co.*, 445 F.2d 967 (4th Cir. 1971).

The defendant's motion as to Count V of the Amended Complaint is denied. The plaintiff thus may maintain a cause of action against the County, based upon her contractual claim for breach of warranty, in accordance with the procedure outlined in Va.Code Ann. §§ 15.1–552–15.1–553 (Repl. Vol.1973).

### III.  HOLDINGS

For the stated reasons, this court holds as follows:

1.  The plaintiff has no implied cause of action under the Federal Aviation Act and therefore the County's motion as to Count VIII of the Amended Complaint is granted.

2.  Jurisdiction over the plaintiff, based on pendent party jurisdiction, is proper.

3.  The County is shielded by sovereign immunity from any tort claims asserted against it and therefore the County's motion as to Counts VI and IX are granted.

4.  The Virginia statutory prerequisites for bringing suit against a county allow a claimant six months from the date of denial of a claim to correct any technical errors. Accordingly, the plaintiff has until December 26, 1980 to correct such errors.

5.  The plaintiff does not have standing to sue as a third party beneficiary of a contract between the County and the United States of America.

6.  An action for breach of warranty is contractual in nature and may be maintained against the County.